UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, a foreign insurer,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL E. WOODS and ANNA K. WOODS, individually and the marital community comprised thereof; and TORRE J. WOODS, an individual,<br><br>Defendants. | CASE NO. 12-5915 RJB<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Defendant Torre J. Woods' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 22) and Plaintiff Safeco Insurance Company of America's ("Safeco") Motion for Summary Judgment (Dkt. 11). The Court has considered the pleadings filed regarding the motions and the file.

In this declaratory judgment action, Safeco seeks to be released from the duty to defend its insured, Michael Woods, for claims made against him in *Woods v. HO Sports Co., Inc., et al.,* Pierce County, Washington Superior Court No. 12-2-08809-3 ("*Woods*"). Dkt. 1. In *Woods*, Torre Woods asserts claims against his father Michael Woods. *Id.*

## I.   FACTS

*Woods* arose from an accident which occurred on Tiger Lake, Washington, where the Woods own a vacation home. Dkt. 20. The vacation home, located at 210 NW Tiger Way West, Belfair, Washington, was insured by Plaintiff Safeco, and is on Tiger Lake. Dkts. 1 and 21, at 6. The Defendants in the instant case are Michael Woods and Anna Woods, a married couple, and their son, Torre Woods, a minor who was about 17 years old at the time of these events. Dkt. 30-1. In order to avoid confusion, this Opinion will now refer to the various Woods by their first name.

In July of 2012, Torre was riding a floating tube, a GTX, with two other children. Dkt. 20. In the *Woods*' Complaint, Torre alleges that the GTX was being pulled by Michael using his 240 horsepower inboard jet boat. Dkt. 11-4, at 2-5. Torre further alleges that Michael "allowed the tube to cross a wave or other water disturbance." Dkt. 11-4, at 6. Torre states that after the tube "encountered turbulence in the water" the riders were dislodged. Dkt. 20, at 2. Torre was rendered a quadriplegic when one of the other children landed on his neck. Dkt. 20.

Torre filed the Pierce County action against the manufacturer of the tube, HO Water Sports Co., Inc. and Michael on May 8, 2012. Dkt. 11-4. On October 16, 2012, Safeco filed this case seeking a declaration that it "has no duty to defend and/or indemnify" its insured Michael for any claims made in *Woods v. HO Sports Co., Inc., et al.,* Pierce County, Washington Superior Court No. 12-2-08809-3. Dkt. 1. It also seeks attorneys' fees and costs. *Id.* Safeco asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332. *Id.*

In November of 2012, Torre's counsel issued a settlement demand letter to Safeco, asking for the $300,000 policy limits. Dkt. 27-4. On December 7, 2012, Michael's motion for

summary dismissal of the claims asserted against him in *Woods* was granted based on the doctrine of parental immunity. Dkt. 21. Torre's motion for reconsideration of that order was denied. Dkt. 27-6. The Pierce County Superior Court, however, certified to the Washington Court of Appeals that the order granting summary judgment "involved a controlling question of law as to which there is substantial ground for a difference of opinion and immediate review of that order may materially advance the ultimate termination of the litigation," pursuant to Washington Rule of Appellate Procedure 2.3(b)(4). Dkt. 27-6. Accordingly, on December 27, 2012, Torre filed a notice seeking discretionary review of the decision granting Michael summary judgment and of the decision denying the motion for reconsideration with the Washington State Court of Appeals Division II. Dkt. 27-6, at 2.

## PENDING MOTIONS

Defendants move for dismissal of this action, arguing that this Court does not have diversity jurisdiction because Safeco is a Washington business and because there is no amount in controversy. Dkts. 22 and 31.

Safeco opposes the motion. Dkt. 25. It argues that although it once was a Washington company, it is now a New Hampshire domiciled corporation with its principal place of business in Boston, Massachusetts. *Id.* It notes that it is undisputed that the Woods are Washington residents. It further argues that the amount in controversy is satisfied because Torre has demanded the full policy amounts, the matter is on appeal and has been certified for immediate review. *Id.*

In Safeco's Motion for Summary Judgment, it argues that it is entitled to a declaration that it has no duty to indemnify/defend Michael in the suit Torre brought against him because the policy does not cover claims of one insured resident (Torre) against another insured resident

(Michael).  Dkts. 11 and 29.  Safeco further argues that it should be released from its duties to Michael in the suit brought against him by his son because the policy does not provide liability coverage for bodily injury arising out of the use of watercraft with an inboard motor greater than 50 horsepower, and the craft involved here was a 240 horsepower inboard jet boat.  *Id.*

The Defendants oppose Safeco's motion, arguing that the home in question was their vacation home, they did not "reside" there, and so Torre was not an "insured" under the policy language.  Dkt. 19.  Defendants further argue that Torre's injuries arose from use of the GTX tube, not the boat, so the watercraft exclusion does not apply.  *Id.*.

## II.   DISCUSSION

### A.   MOTION TO DISMISS - STANDARD

A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v.*

1  *Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated*

2  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the

3  existence of subject matter jurisdiction.  *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co.,*

4  *Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

5        **B.  DEFENDANTS' MOTION TO DISMISS**

6        Under 28 U.S.C. § 1332(a), district courts have jurisdiction over "civil actions where the

7  matter in controversy exceeds the sum or value of $75,000" and is between citizens of different

8  States.  "The federal diversity jurisdiction statute provides that 'a corporation shall be deemed to

9  be a citizen of any State by which it has been incorporated and of the State where it has its

10  principal place of business.'"  *Hertz Corp. v. Friend,* 130 S. Ct. 1181, 1192-93(2010) (*quoting* 28

11  U.S.C. § 1332(c)(1)).  A corporation has its "principal place of business" at the corporation's

12  "nerve center," that is where the "a corporation's officers direct, control, and coordinate the

13  corporation's activities."  *Id.,* at 1192.  As the party asserting diversity jurisdiction, Safeco has

14  the burden of persuasion here.  *Hertz,* at 1193.

15        Defendants' Motion to Dismiss (Dkt. 22) should be denied because Safeco has shown

16  that it is no longer a citizen of Washington, but now has its "nerve center" in Boston,

17  Massachusetts and the amount in controversy is over $75,000.  In support of its allegation that its

18  "nerve center" is in Boston, Safeco has submitted the Declaration of James R. Pugh, a corporate

19  officer.  Dkt. 26.  Mr. Pugh states that Safeco was purchased by Liberty Mutual Group in 2008

20  and now is a wholly owned subsidiary of Liberty Mutual Group.  *Id.*, at 2.  He states that the

21  majority of the officers comprising its executive management team are now based out of Boston,

22  Massachusetts.  *Id.*  He asserts that Safeco's corporate center is now in Boston.  *Id.*  Mr. Pugh

23  states that the board of directors are located and work out of Liberty Mutual Group's Boston,

24

1  Massachusetts headquarters. *Id.* He states that "[m]eetings involving the executives and
2  directors regularly occur" in Boston and . . . this is where Safeco "primarily maintains its records
3  and handles core administrative matters." *Id.* He asserts that Boston is now where Safeco's
4  "overall corporate activities and strategies are dictated." *Id.* He further notes that the
5  Washington State Office of the Insurance Commission approved Safeco's transfer of its domicile
6  address to New Hampshire on January 12, 2012. *Id.*, at 3. Although Defendants point out that
7  Safeco's website still states that it is "based in Seattle," that is not sufficient to overcome
8  Safeco's evidence. Nor is the fact that there is a building and a baseball stadium in Seattle
9  named after it. Safeco has shown that its "never center" is in Boston, and so its "principal place
10 of business" is in Massachusetts. *See Hertz*, at 1192 (holding a corporation has its "principal
11 place of business" at the corporation's "nerve center"). There is diversity of citizenship between
12 Safeco and the Woods, who are Washington residents.

13       Moreover, the amount in controversy remains over $75,000. Although Michael prevailed
14 in his Motion for Summary Judgment and got the claims against him dismissed based on parental
15 immunity, that order has been certified by the Superior Court for an immediate appeal to the
16 Washington State Court of Appeals Division II. Torre has demanded the policy limits of
17 $300,000. The state court matter is still ongoing, and so the amount in controversy remains over
18 $75,000.

19       This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). The
20 parties are residents of different states and the amount in controversy is at least $75,000.

21       **C. MOTION FOR SUMMARY JUDGMENT - STANDARD**

22       Summary judgment is proper only if the pleadings, the discovery and disclosure materials
23 on file, and any affidavits show that there is no genuine issue as to any material fact and that the
24

movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

      The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### D.  SAFECO'S MOTION FOR SUMMARY JUDGMENT

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

> In Washington, insurance policies are construed as contracts.  An insurance policy is construed as a whole, with the policy being given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665-666 (2000)(*internal quotations and citations omitted*).

Safeco's Motion for Summary Judgment (Dkt. 11) should be granted because the policy does not cover claims of one insured against another insured.  Safeco should be held to have no duty to defend or indemnify Michael in the suit his son brought against him.  The policy provides:

> 2. Coverage E.  "Personal Liability . . . does not apply to: . . ."
>
>   "f. bodily injury to an insured within the meaning of parts (1) or (2) of Policy Definitions, 3.g. Insured."

Dkt. 21, at 37-40.  Parts (1) and (2) of the Policy Definitions read:

> 1. Throughout this policy, "you" and "your" refer to:
>
>   a. the "named insured" shown in your Policy Declarations; and if a resident of the same household:

       b. the spouse;

       c. the civil partner by civil union . . . or

       d. the domestic partner. . . .

   2. "We," "us" and "our" refer to the underwriting company . . .

Dkt. 21, at 46. Part 3.g. "Insured" provides:

   3. In addition, certain words and phrases are defined as follows: . . .

       g. Insured means:

          (1) you; and

          (2) so long as you remain a resident of the residence premises, the
       following residents of the residence premises:

            (a) your relatives;

            (b) another person under the age of 24 who is in the care of any
        person described in (1) or (2)(a) above.

Anyone described above who is a student temporarily residing away from your residence premises while attending school shall be considered a resident of your residence premises."

Dkt. 21, at 47. The named "insured"[s] are Michael and Anna, and the "residence premises" is the property located at 210 NW Tiger Way West, Belfair, Washington. Dkt. 21, at 6. The policy excludes "personal liability" coverage for bodily injury to an "insured." The plain and unambiguous language of the policy states that an "insured" includes "you" and "so long as you remain a resident of the residence premises, the following residents of the residence premises: . . your relatives." The Woods argue that their son, Torre, was not an "insured" under the policy because this "residence premises" was their vacation home so they did not permanently "reside" there. Dkt. 19. A "fair, reasonable, and sensible construction" of the policy language does not

1  support their assertion. Webster's Dictionary defines a "resident" as "living in a place for some
2  length of time." The Woods were staying at the insured home the night of the accident and had
3  spent at least some of the summer there. Under the ordinary meaning of the word "resident" they
4  were and had been living at the vacation home for some length of time. The policy excludes
5  coverage for injury to Torre because he and his parents are "insured[s]" under the policy.

6      Safeco should also be granted declaratory relief releasing it from the duty to defend Michael
7  in the suit brought against him by his son because the policy does not provide liability coverage
8  for bodily injury arising out of the use of watercraft with an inboard motor greater than 50
9  horsepower, and the craft involved here was a 240 horsepower inboard jet boat. The policy
10 language provides:

11     1. Coverage E- Personal Liability and Coverage F – Medical Payments to Others do not
12        apply to bodily injury or property damage: . . .
13           F. Arising out of the ownership, maintenance, use, loading, or unloading of: . . .
14           3. Watercraft: (a) owned by or rented to any insured if it has inboard-
15           outdrive motor power of more than 50 horsepower.

16 Dkt. 21, at 37.

17     The Woods argue that the watercraft exclusion does not apply because Torre's injuries arose
18 from the use of the GTX tube, which has zero horse power, not the use of the boat. Dkt. 19.

19     "The phrase 'arising out of' is unambiguous and has a broader meaning than 'caused by' or
20 'resulted from.'" *Toll Bridge Authority v. Aetna Ins. Co.*, 54 Wn. App. 400, 404 (1989). Here,
21 as is in other Washington insurance contracts, "[i]t is ordinarily understood to mean 'originating
22 from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" *Id.* The accident here was not
23 caused just from the use of the tube. The children were not merely floating in the lake on it. The
24

accident "flowed from" the use of the boat to pull the tube.  The accident "originated from" the use of the boat's power.  Accordingly, bodily injury from the use of this boat was not covered under the policy.

Safeco should be held to have no duty to indemnify/defend Michael in *Woods v. HO Sports Co., Inc., et al.,* Pierce County, Washington Superior Court No. 12-2-08809-3.

### III.    ORDER

It is **ORDERED** that:

- Defendant Torre J. Woods' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 22) **IS DENIED**;
- Plaintiff Safeco Insurance Company of America's Motion for Summary Judgment (Dkt. 11) **IS GRANTED**; and
- Safeco Insurance Company of America has no duty to indemnify/defend Michael in *Woods v. HO Sports Co., Inc., et al.,* Pierce County, Washington Superior Court No. 12-2-08809-3.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 28th day of January, 2013.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge